UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW JERSEY, DEPARTMENT
OF TREASURY, DIVISION OF
INVESTMENT, on behalf of COMMON
PENSION FUND A,

                     Plaintiff,

                v.

MERRILL LYNCH & CO., INC., and BANK
OF AMERICA CORPORATION,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

:  Civil Action No. 09-4526
   (DRD)(MAS)

:

   Hon. Dickinson R. Debevoise,
:  U.S.D.J.

:  **Motion Date: November 2, 2009**

:  <u>**Oral Argument Requested**</u>

:

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

---

Andrew Muscato
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
(A Delaware Limited Liability
 Partnership)
Four Times Square
New York, New York 10036-6922
Tel.: 212-735-3000
Fax.: 212-735-2000

Of Counsel
Jay B. Kasner
Scott D. Musoff

*Attorneys for Defendants*
*Merrill Lynch & Co., Inc. and*
*Bank of America Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

PRELIMINARY STATEMENT .......................................................... 1

FACTUAL BACKGROUND ............................................................... 3

    Procedural History ....................................................................... 3

    The Parties................................................................................... 5

        1.    NJDOI................................................................ 5

        2.    Merrill and Bank of America ....................................... 5

    The Representations and Warranties at Issue in the Complaint ................... 6

    NJDOI'S Investment in Merrill ................................................... 8

ARGUMENT ................................................................................. 16

I.    THE VENUE SELECTION CLAUSES IN THE AGREEMENTS
    BETWEEN NJDOI AND MERRILL DO NOT DEPRIVE THIS
    COURT OF JURISDICTION OR PRECLUDE REMOVAL...................... 16

    A.    The Plain Language of Those Clauses Supports Jurisdiction in
        This Court .................................................................. 16

    B.    Any Doubts as to the Meaning of Section 6.10 Are Construed
        Against Plaintiff........................................................... 24

II.    SLUSA IS INAPPLICABLE AND DOES NOT REQUIRE A
    REMAND ........................................................................... 25

III.    PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED
    BECAUSE THIS COURT POSSESSES SUBJECT MATTER
    JURISDICTION UNDER 28 U.S.C. § 1331 AND 28 U.S.C. §
    1441(A) ............................................................................ 26

    A.    The Complaint Necessarily Raises a Stated Federal Issue that is
        Substantial and Disputed .................................................. 31

B.    Exercising Jurisdiction Does Not Disturb the Balance of
Federal and State Judicial Responsibilities ........................................ 36

CONCLUSION ........................................................................................................ 38

# TABLE OF AUTHORITIES

## CASES

*Air Measurement Technologies, Inc v, Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) .......................................... 29

*Albert v. Alex. Brown Management Services, Inc.*, Nos. Civ.A. 762-N, Civ.A. 763-N, 2005 WL 2130607 (Del. Ch. Aug. 26, 2009) ................. 17

*American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921 (10th Cir. 2005) ..................................................... 19, 23, 24

*AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir. 1984) ....................................................... 22

*Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC*, No. 03-4317, 2009 WL 2999355 (D.N.J. Sept. 22, 2009) ...................... 18

*Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005) ................................................... 28, 29, 30, 33

*Cessna Aircraft Co. v. Fidelity & Casualty Co. of New York*, 616 F. Supp. 671 (D.N.J. 1985) ................................................. 22

*Charles Cerlan, Inc. v. Woodbridge Ford*, 197 N.J. Super. 104, 106-09 (Law Div. 1984) ........................................ 17

*Chirik v. TD Banknorth, N.A.*, No. 06-04866, 2008 WL 18621 (E.D. Pa. 2008) .................................... 29

*CONSOL Energy Inc. v. Berkshire Hathaway Inc.*, 252 F. App'x 481 (3d Cir. 2007) ................................................. 21

*Cribbins v. Beal Bank SSB*, No. 07-391, 2007 WL 1451666 (W.D. Pa. May 15, 2007) .................... 22

*Dixon v. TSE International Inc.*, 330 F.3d 396 (5th Cir. 2003) ................................................. 23

*EIJ, Inc. v. United Parcel Service, Inc.*,
    233 F. App'x 600 (9th Cir. 2007)................................................................. 28

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006)........................................................................................ 30

*Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*,
    106 F.3d 318 (10th Cir. 1997) ..................................................................... 22

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
    545 U.S. 546 (2005)........................................................................................ 30

*Fagin v. Gilmartin*,
    No. 03-2631, 2007 WL 419286 (D.N.J. Feb. 1, 2007)............................. 35

*Fairfax Financial Holdings Ltd. v. S.A.C. Capital Management, LLC*,
    No. 06-cv-4197, 2007 WL 1456204 (D.N.J. May 15, 2007) .............34-35

*Fleming & Hall, Ltd. v. Cope*,
    30 F. Supp. 2d 459 (D. Del. 1998)............................................................. 22

*Foster v. Chesapeake Insurance Co*,
    933 F.2d 1207 (3d Cir. 1991) ..................................................................... 21

*General Engineering Corp. v. Martin Marietta Alumina, Inc.*,
    783 F.2d 352 (3d Cir. 1986)......................................................................... 21

*Grable & Sons Metal Products, Inc. v. Darue Engineering &*
    *Manufacturing*, 545 U.S. 308 (2005)............................................. 2, 29, 36

*Guinta v. Accenture, LLP*,
    Civ. No. 08-3376, 2008 WL 4852934 (D.N.J. Nov. 7, 2008) ................. 24

*Harvard Eye Associates v. Clinitec International, Inc.*,
    No. Civ. A. 98-302, 1998 WL 248916 (E.D. Pa May 5, 1998)............... 20

*Johnson v. Northern States Power Co.*,
    No. Civ. A. 99-2394, 2000 WL 1683658 (D. Kan. Nov. 2, 2000).......... 19

*Jumura v. State Farm Insurance Co.*,
    55 F.3d 873 (3d Cir. 1995)........................................................................ 19

*Kantha v. Pacific Life Insurance Co.*,
    No. 06-0905, 2006 WL 2583242 (D.N.J. Sept. 6, 2006)........................ 37

*Karl Koch Erecting Co. v. New York Convention Center Development
    Corp.*, 838 F.2d 656 (2d Cir. 1988) ....................................................... 22

*Koresko v. Murphy*,
    464 F. Supp. 2d 463 (E.D. Pa. 2006) ...................................................... 29

*Lander v. Hartford Life & Annuity Insurance Co.*,
    251 F.3d 101 (2d Cir. 2001).................................................................... 26

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*,
    No. Civ.A. 19760-NC, 2004 WL 415251 (Del. Ch. Mar. 4, 2004)......... 17

*Mellon Bank N.A. v. Aetna Business Credit, Inc.*,
    619 F.2d 1001 (3d Cir. 1980) ................................................................. 19

*Merrill Lynch International v. XL Capital Assurance Inc.*,
    564 F. Supp. 2d 298 (S.D.N.Y. 2008) ....................................................... 8

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)................................................................................. 36

*Milk 'N' More, Inc. v. Beavert*,
    963 F.2d 1342 (10th Cir. 1992) .............................................................. 23

*Ortiz v. University of Medicinel & Dentistry of New Jersey*,
    No. 08-2669, 2009 WL 737046 (D.N.J. Mar. 18, 2009) ................... 29, 34

*Oxford Realty Group, LLC v. Axis Reinsurance Co.*,
    No. 08-CV-6303, 2009 WL 1324028 (D.N.J. May 12, 2009)................. 22

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008), *aff'd*, No. 08-3378-cv, 2009
    WL 2959883 (2d Cir. Sept. 17, 2009) ................................................. 2, 28

v

*Prager v. Knight/Trimark Group, Inc.*,
   124 F. Supp. 2d 229 (D.N.J. 2000) ...................................................... 25

*ReliaStar Life Insurance Co. of New York v. EMC National Life Co.*,
   564 F.3d 81 (2d Cir. 2009) ............................................................. 19

*Retirement Systems of Alabama v. Merrill Lynch & Co.*,
   209 F. Supp. 2d 1257 (M.D. Ala. 2002) ............................................. 25

*Rose v. SLM Finance Corp.*,
   No. 3:05CV445, 2007 WL 674319 (W.D.N.C. Feb. 28, 2007) .............. 34

*Salovaara v. Jackson National Life Insurance Co.*,
   246 F.3d 289 (3d Cir. 2001) ............................................................ 21

*Siravo v. Crown, Cork & Seal Co.*,
   256 F. App'x 577 (3d Cir. 2007) ...................................................... 30

*Spatz v. Nascone*,
   364 F. Supp. 967 (W.D. Pa. 1973), *order supplemented*, 368 F.
   Supp. 352 (W.D. Pa. 1973) ............................................................. 24

*Stechler v. Sidley Austin Brown & Wood, LLP*,
   No. Civ.A. 05-3485, 2006 WL 90916 (D.N.J. Jan. 13, 2006) ............. 35

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ...................................................................... 36

*Tennessee Consolidated Retirement System v. Citigroup, Inc.*,
   No. 3:03-0128, 2003 WL. 22190841 (M.D. Tenn. May 9, 2003) .......... 25

*Waris v. Ormond*,
   No. 08-5709, 2009 WL 2385891 (E.D. Pa. July 29, 2009) ................. 37

*Wietschner v. Gilmartin*,
   No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003) ...... 35

## STATUTES, RULES AND REGULATIONS

15 U.S.C. § 77v(a) ........................................................................ 24

15 U.S.C. § 78aa .......................................................... 20, 25, 36

15 U.S.C. § 78bb(f)(1)(A), (B) ......................................... 25

15 U.S.C. § 78bb(f)(2) ..................................................... 25

15 U.S.C. § 78bb(f)(3)(B), (D) ......................................... 25

28 U.S.C. § 1331 ........................................................ 2, 4, 28

28 U.S.C. § 1367 ............................................................ 2, 4

28 U.S.C. § 1441 ............................................................ 2, 4

28 U.S.C. § 1447(c) .......................................................... 36

47 U.S.C. § 543(d) ........................................................... 33

Securities Litigation Uniform Standards Act of 1998, Pub. L. No.
    105-353, § 2, 112 Stat. 3227, 3227 .......................... 25

Fed. R. Civ. P. 12(b)(6) .................................................... 5

Local Civ. R. 101.1(b) ..................................................... 18

17 C.F.R. § 240.10b-5 (2009) ......................................... 26

## OTHER AUTHORITIES

Allyn Z. Lite, *N.J. Federal Practice Rules*, Local Civ. R. 101.1 cmt.
    3a ............................................................................ 18

Sylvia B. Pressler, *Current N.J. Court Rules*, Rule 4.1 cmt. ......... 17

Defendants Merrill Lynch & Co., Inc. ("Merrill") and Bank of America Corporation ("BAC" or "Bank of America") (together, the "Defendants") respectfully submit this memorandum of law in opposition to the Motion to Remand this case to the Superior Court of New Jersey filed by Plaintiff State of New Jersey, Department of Treasury, Division of Investment ("NJDOI").

## PRELIMINARY STATEMENT

Through its Complaint in the present case, NJDOI seeks to have the Court mollify its delayed buyer's remorse concerning its investment, in the midst of the current economic crisis, in Merrill preferred shares (which paid a 9% dividend) and its subsequent agreement to convert those shares into Merrill common shares. The predicate relied upon by NJDOI to obtain compensation for its alleged investment losses is an alleged breach by Defendants of representations and warranties in the investment agreements that Merrill's SEC filings were free from misstatements and omissions of material fact. NJDOI now asserts that Merrill's SEC filings did not accurately disclose its "exposure on its coverage to monoline insurers for High Risk Insured Assets." (Compl. ¶¶ 228, 234.)[1] "Whether a duty to disclose exists depends largely on the itemized disclosures required by the [Federal] securities

---

[1] In their pending Motion to Dismiss, Defendants seek dismissal based upon, among other things, the established principle of federal securities law that a later disclosure cannot be presumed to render earlier disclosures misleading. (*See* Defendants' Memorandum of Law in Support of Motion to Dismiss at 20.)

laws and the regulations promulgated thereunder." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008), *aff'd*, No. 08-3378-cv, 2009 WL 2959883 (2d Cir. Sept. 17, 2009).  Consequently, the Complaint necessarily raises a stated federal issue:  *i.e.*, did Merrill's various SEC filings contain misstatements and omissions of material fact in violation of SEC requirements and, in turn, in breach of Merrill's representations and warranties in the investment agreements?

Accordingly, Defendants removed the present action to this Court on September 2, 2009 from the Superior Court of New Jersey, Law Division, Hudson County based upon the authority of *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and its decisional progeny. Federal court jurisdiction exists in this case because claims in the Complaint "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.  As a result, Defendants properly effected removal of the Complaint to this Court pursuant to 28 U.S.C. §§ 1331, 1367 and 1441 since the Complaint's claims contain embedded federal securities law issues under the SEC rules and regulations including, but not limited to, the Securities Exchange Act of 1934.

Plaintiff's motion to remand is based upon the meritless claim that the investment agreements contain venue selection clauses wherein Defendants[2] purportedly waived their right to litigate in federal court and the fanciful suggestion that the Securities Litigation Uniform Standards Act (SLUSA) somehow divests this Court of jurisdiction.  However, the construction of the venue selection clauses advanced by NJDOI is contrary to their plain and common sense meaning.  The reference to "the appropriate courts of the State of New Jersey" plainly includes the District Court for the District of New Jersey.  And SLUSA applies only to certain "covered class actions" and does not affect the law as to individual lawsuits, such as this one, that necessarily raise a stated issue of federal securities law.

For these reasons, as further explained below, NJDOI's Motion to Remand should be denied.

## FACTUAL BACKGROUND

### Procedural History

This action was commenced on July 28, 2009, in the Superior Court of New Jersey, Law Division, Hudson County based upon alleged breaches of

---

[2]    Apart from the other obvious deficiencies in this contention, NJDOI overlooks that Defendant Bank of America was not a party to those agreements and is not subject to any venue selection provision.

representations and warranties that purportedly violate the disclosure requirements

of the Federal securities laws and the regulations promulgated thereunder.

    The Complaint alleges five causes of action:

1/ breach of contract under Section 3.6(a)-(c) of the Share Purchase Agreement in that Merrill "failed to disclose in any of its SEC filings, prior to the filing of the January 16, 2009 Form 8-K, and in violation of GAAP, *inter alia*, that Merrill had $50.3 billion of undisclosed exposure to monoline insurers . . . (emphasis added)" (Compl. ¶¶ 225-30);

2/ breach of contract under Section 3.6(a)-(c) of the Share Exchange Agreement in that Merrill in that Merrill "failed to disclose in any of its SEC filings, prior to the filing of the January 16, 2009 Form 8-K, and in violation of GAAP, *inter alia*, that Merrill had $50.3 billion of undisclosed exposure to monoline insurers . . . (emphasis added)" (Compl. ¶¶ 231-36);

3/ breach of contract in that Merrill violated the representations and warranties of the Share Exchange Agreement by granting preferential terms to another investor (Compl. ¶¶ 237-44);

4/ negligent misrepresentation by Defendants in, among other things, "at least negligently falsely represent[ing], among other things, that "Merrill's SEC filings complied with GAAP" and that "Merrill's SEC filings fairly presented the Company's financial condition and that Defendants "failed to disclose in any of its SEC filings . . . that Merrill had in excess of $50.3 billion of undisclosed exposure to monoline insurance . . . (emphasis added)" (Compl. ¶¶ 245-56); and

5/ breach of the covenant of good faith and fair dealing (Compl. ¶¶ 257-60).

    The present action was timely removed to this Court on September 2, 2009,

pursuant to 28 U.S.C. §§ 1331, 1367 and 1441 because federal law issues under the

Securities Exchange Act of 1934 are embedded in the claims pleaded in the

Complaint.

On October 13, 2009, Defendants Merrill and Bank of America filed a Motion to Dismiss the Complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  That motion is pending and returnable before the Court on November 16, 2009.

**The Parties**

### 1.    NJDOI

NJDOI is an instrumentality of the State of New Jersey that manages in excess of $60 billion in investments for "public retirement systems" including the common trust fund known as Common Pension Fund A.  (Compl. ¶¶ 15-18.)[3]

### 2.    Merrill and Bank of America

Defendant Merrill is a business entity organized under the laws of the State of Delaware with its principal place of business in New York, New York.  Merrill was merged into a wholly owned subsidiary of Bank of America on January 1, 2009.  (*Id.* ¶¶ 19, 22-23.)  Bank of America, a bank and financial holding company,

---

[3]    Citations in the form of "¶ __" refer to paragraphs in the Complaint and citations to "Remand" refer to Plaintiff's Memorandum in Support of Motion to Remand filed September 16, 2009.  Defendants also refer to the Certification of Andrew Muscato dated October 13, 2009, in support of Defendants' Motion to Dismiss that is part of the docket file in this case.  That Certification is cited herein as "Muscato Cert. __."

is a Delaware corporation with its principal place of business in Charlotte, North

Carolina.  (*Id.* ¶¶ 24-25.)

### **The Representations and Warranties at Issue in the Complaint**

Under Section 3.6(a)–(c) of the both the Share Subscription Agreement and

the Share Exchange Agreement[4] between NJDOI and Merrill, Merrill stated,

among other things, that its corporate filings were SEC compliant, that "the

consolidated balance sheets . . . included in the Reports filed with the SEC under

the Exchange Act . . . fairly present in all material respects the consolidated

financial position of the Company and its consolidated Subsidiaries" and that they

did not contain "any untrue statement of a material fact or omit to state any

material fact . . . necessary in order to make the statements . . . not misleading":

> (a) Since January 1, 2005, **the Company and each of its
> Subsidiaries has timely filed or furnished all reports, registration
> statements, proxy statements and other materials, together with
> any amendments required to be made with respect thereto, that
> were required to be filed with (A) the SEC under the Securities
> Act or the Exchange Act,** (B) the Office of Thrift Supervision, (C)
> the Federal Deposit Insurance Corporation, (D) the Federal Reserve
> Board, or (E) any other federal, state or foreign Governmental Entity
> (all such reports and statements filed or furnished since January 1,
> 2005 are collectively referred to herein as the "Reports"), and have
> paid all fees and assessments due and payable in connection therewith,
> except where the failure to timely file or furnish all such Reports or
> pay all fees and assessments due and payable would not, individually

---

4   The Share Subscription Agreement and the Share Exchange Agreement are
each referred to as "Agreement" and collectively the "Agreements."

or in the aggregate, have had or be reasonably expected to have a Material Adverse Effect. **As of their respective dates, the Reports complied in all material respects with all of the statutes and published rules and regulations enforced or promulgated by the regulatory authority with which they were filed and (A) with respect to Reports filed with the SEC, did not as of the date of filing thereof with the SEC contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading** and (B) with respect to all other Reports, were complete and accurate in all material respects as of their respective dates. . . .

(b) **Each of the consolidated balance sheets, and the related consolidated statements of income, changes in stockholders' equity and cash flows, included in the Reports filed with the SEC under the Exchange Act (A) have been prepared from, and are in accordance with, the books and records of the Company and its Subsidiaries, (B) fairly present in all material respects the consolidated financial position of the Company and its consolidated Subsidiaries as of the dates shown and the results of the consolidated operations, changes in stockholders' equity and cash flows of the Company and its consolidated Subsidiaries for the respective fiscal periods or as of the respective dates therein set forth, subject, in the case of any unaudited financial statements, to normal recurring year-end audit adjustments, (C) complied as to form, as of their respective dates of filing with the SEC, in all material respects with applicable accounting requirements and with the published rules and regulations of the SEC with respect thereto and (D) have been prepared in accordance with GAAP consistently applied during the periods involved, except as otherwise set forth in the notes thereto.**

(c) The records, systems, controls, data and information of the Company and its Subsidiaries are recorded, stored, maintained and operated under means (including any electronic, mechanical or photographic process, whether computerized or not) that are under the exclusive ownership and direct control of the Company or its Subsidiaries or accountants (including all means of access thereto and

7

therefrom), except for any non-exclusive ownership and non-direct control that would not reasonably be expected to have a Material Adverse Effect on the system of internal accounting controls described below in this Section 3.6(c). **The Company (A) has implemented and maintains (x) disclosure controls and procedures and (y) internal control over financial reporting (each as defined in Rule 13a-15(e) of the Exchange Act) designed to (x) ensure that material information relating to the Company, including its consolidated Subsidiaries, is made known to the chief executive officer and the chief financial officer of the Company by others within those entities, and (y) provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP, respectively, and (B) has disclosed, based on its most recent evaluation prior to the date hereof, to the Company's outside auditors and the audit committee of the Company's Board of Directors (x) any significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) that are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information and (y) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting. . . .** (emphasis added).

(Muscato Cert. Exs. B & C § 3.6(a)–(c).)

## NJDOI'S Investment in Merrill

The third quarter of 2007 witnessed unprecedented events in the credit markets. These events negatively affected the value of Merrill's subprime residential mortgage-related assets and CDO positions.[5] (Muscato Cert. Ex. D at

---

[5] "A CDO is a security for which cash flows are generated by an underlying pool of debt instruments such as bonds, notes or loans (called the collateral); these

*(cont'd)*

8

99).  And on October 24, 2007, Merrill issued a press release announcing that the

value of its CDO positions had fallen by $7.9 billion for the third quarter of 2007.

(Compl. ¶ 61.)  Merrill's November 7, 2007 third quarter 2007 SEC Form 10-Q

included this $7.9 billion write-down and disclosed Merrill's remaining net

exposure to AAA-rated super senior CDOs, among other things.

Merrill then sought investors to replace the capital it had lost.  And on

January 15, 2008, Merrill entered into separate agreements to raise approximately

$6.6 billion from seven accredited investors [6] including NJDOI.[7]  Through these

agreements, Merrill sold the investors an aggregate 66,000 shares of 9% nonvoting

---

*(cont'd from previous page)*

often are ultimately secured by or derived from residential mortgages."  *Merrill Lynch Int'l v. XL Capital Assurance Inc.*, 564 F. Supp. 2d 298, 300 (S.D.N.Y. 2008).  The type of asset underlying the financial instruments gives it its name: "MBS" (mortgage backed security), "ABS" (asset backed security).  (*Id.* ¶¶ 35-37.)  A CDO may contain a variety of assets and is structured so that an investor can purchase a slice or tranche of the CDO with the less risky (AAA or super senior) slice providing less income than the riskier slices (mezzanine or AA-BB and equity or unrated.)  (*Id.* ¶¶ 38, 40.)

[6]  The Securities Act of 1933 permits an issuer to sell its securities without registering them if those securities are sold to accredited investors.  Plaintiff is an accredited investor.  (*See* Muscato Cert. Ex. B § 4.7(g).)

[7]  Even though the credit markets were suffering a severe dislocation that witnessed many investment banks writing down billions of dollars in losses from their fixed income business, including Merrill's $7.9 billion writedown, on January 15, 2008, NJDOI agreed to purchase Merrill's and the parties executed a fully integrated Share Subscription Agreement to memorialize the transaction. This Agreement provides that it will be construed in accordance with the laws

*(cont'd)*

mandatory convertible noncumulative preferred stock, Series 1 at a price of $100,000 per share.[8] (Compl. ¶ 71.)

NJDOI was given access to voluminous Merrill financial data prior to agreeing to make its investment, including access to all materials relating to the business, finances and operations of Merrill. (*See* Muscato Cert. Ex. B § 4.7(d), (e).) And the Agreement's Disclosure Schedules informed Plaintiff that Merrill intended to "report a material net loss for the Fourth Quarter as a result of material losses and write downs attributable to subprime, Collateralized Debt Obligations ('CDOs') and other asset classes, including monoline exposure." Also disclosed was that it was "possible that these losses and write downs could cause [Merrill's] capital ratio to fall below the level required by the [SEC] to be classified as 'well capitalized.'" (*Id.* Disclosure Schedules at 3.)

Two days later, on January 17, 2008, Merrill publicly announced a fourth quarter 2007 net loss of $9.8 billion that included a write-down of $11.5 billion of the value of CDOs and mortgages and a $2.6 billion reduction in the value of

---

*(cont'd from previous page)*
    of the State of New York. (Compl. ¶ 30.) A copy of the Share Subscription Agreement with NJDOI is attached to the Muscato Cert. as Exhibit B.

[8]    The other investors with whom Merrill entered into agreements are Korean Investment Corporation, Kuwait Investment Authority, Mizuho Corporate Bank, TPG-Axon Capital, The Olayan Group and T. Rowe Price Associates, Inc. (*Id.* ¶ 71.)

monoline insurance policies that offered protection against further CDO losses.[9] (Compl. ¶¶ 96-99.) Merrill then filed its 2007 10-K with the SEC on February 28, 2008, and announced that it still owned $30.4 billion in super senior AAA CDOs and that it had purchased $23.6 billion of hedges against those assets. (*Id.* ¶ 101.)

After the close of the first quarter of 2008, Merrill filed a Form 8-K with the SEC on April 17, 2008, that announced a net loss of $1.96 billion which included $1.5 billion of net write-downs on CDOs. (*Id.* ¶¶ 106, 107.)

At the close of the second quarter 2008, Merrill announced on July 17, 2008, continuing efforts to enhance its capital position by, among other things, selling its 20% ownership stake in Bloomberg L.P. It also announced net losses totaling $3.5 billion related to CDOs and credit valuation adjustments of negative $2.9 billion about half of which related to hedges on CDOs. (*See* Muscato Cert. Ex. G.) Within days of this disclosure, Merrill contacted Plaintiff and the six other investors of the Series 1 preferred stock and requested that they exchange their

---

[9]  A loss of the expected value of a monoline insurance policy is known as a "credit valuation adjustment" and reflects the decreased likelihood that the insurer will satisfy its obligations if called upon to do so in the event of a loss on the insured asset. (*Id.* ¶ 100.) Monoline insurance is insurance for debt instruments that is provided by entities that only insure financial assets. (Compl. ¶¶ 43-44.) One type of monoline insurance is a credit default swap ("CDS") although CDS may be entered into by entities other than monoline insurers. (*Id.* ¶¶ 45, 48.) In a CDS, often referred to as a hedge, one party insures the risk of loss on a security in return for premium payments during the term of the swap. (*Id.* ¶¶ 46, 47.)

preferred stock for common stock but waive the reset feature in a further effort to enhance Merrill's capital position.  (Compl. ¶¶ 113, 116-18, 120.)

NJDOI then agreed to exchange its Series 1 preferred stock for 11 million shares of Merrill common stock under the Share Exchange Agreement dated July 28, 2009.[10]  Merrill also reached similar agreements with all but two of the Series 1 preferred stock investors.  Section 3.13 of the July 28, 2009 Disclosure Schedules explained that not all of the six parties had reached the same decision and that:

> at least one holder of Preferred Shares may not exchange its Preferred
> Shares for Common Stock and at least one holder of Preferred Shares
> may exchange its Preferred Shares for an equal number of shares of a
> new series of 9% Non-Voting Mandatory Convertible Non-
> Cumulative Preferred Stock, par value $1.00 per share and liquidation
> preference $100,000 per share (the "New Series").  The New Series
> will have substantially the same voting powers, preferences and
> relative, participating, optional and other special rights, and
> qualifications, limitations and restrictions as the Preferred Shares but
> will have a reference price of $33.00 and no reset protection.

(Muscato Cert. Ex. C.)

Plaintiff now complains about the price of its exchange and alleges that it had sought to obtain from Merrill exchange terms that were as favorable to it as

---

[10]  This Agreement provides that it is to be construed under the laws of the State of
New York.  (A copy of this Agreement is attached to the Muscato Cert. as
Exhibit C.)  With the exception of Mizuho Corporate Bank (Compl. ¶ 130) and
TPG-Axon Capital (Compl. ¶ 148), the other investors agreed to exchange their
Series 1 Preferred Shares to Merrill common stock on the same terms as NJDOI.
None of these other investors have commenced an action against Merrill.

12

those obtained by Series 1 investor TPG.[11]  (Compl. ¶ 125.)  On July 28, 2008,

based on its understanding that TPG had agreed to exchange its Series 1 preferred

for common stock, Merrill issued a press release stating that:

> In addition, $5.4 billion of the $6.6 billion of outstanding mandatory
> convertible preferred holders have agreed to exchange their
> outstanding preferred stock for approximately 195 million shares of
> common stock, plus accrued dividends payable in cash or stock at the
> option of the holder. A holder of $1.2 billion of outstanding
> mandatory convertible preferred has agreed to exchange their
> securities for new mandatory convertible preferred securities with a
> reference price of $33.00. The reset feature for all securities
> exchanged has been eliminated.

(Compl. ¶ 136.)  The next day, Merrill announced that "a $500 million holder of

the mandatory convertible preferred stock has decided not to exchange their shares

into common stock.  The change has no impact on 'if-converted' book value per

common share or the firm's pro forma capital ratios.  The security's reset feature

will be eliminated." (*See* Muscato Cert. Ex. H.)  This event was fully consistent

with the terms of Section 3.13 which disclosed that at least one investor did not

exchange for common stock and that at least one investor exchanged its Series 1

preferred stock for a new series of preferred stock with a reference price of $33.00.

     After the exchange, the capital markets took an incredible turn for the worse,

culminating with the seismic Lehman Brothers bankruptcy filing in September

---

[11]   Neither the Shares Exchange Agreement nor its Disclosure Schedules contains
       any mention of TPG.

2008. Bank of America and Merrill then announced that Bank of America would acquire Merrill for approximately $50 billion in Bank of America common stock. (Compl. ¶ 167.) On December 5, 2008, Merrill's shareholders approved the merger and the merger closed on January 1, 2009 with Merrill being merged into a wholly-owned subsidiary of BAC. (*Id.* ¶¶ 23, 174.)

By this time in 2008, NJDOI, in managing its diverse portfolio, had already been pulling back its exposure in the financial sector over the prior two years and, according to William G. Clark, Director of NJDOI, by the third quarter of 2008 it was underexposed in that sector by $1.7 billion. (Report by Mr. Clark in the 9/18/08 Minutes of the New Jersey State Investment Council Meeting, pp. 6-9 attached to Muscato Cert. as Ex. J). Mr. Clark blamed the financial crisis on the Federal Administration and the Federal Reserve saying the federal government was "behaving like the largest hedge fund in the world instead of providing the certainty investors need." (*Id.*)

The purchase of the Merrill preferred shares was part of a carefully considered investment strategy:

> "[E]ven with the purchase of Merrill Lynch and Citigroup preferred shares in January, the pension fund remained $1.4 billion underweight in financials at that time, and sold off another $300 million in financial equities in July and August, before the current banking crisis. Director Clark concluded that 'to the extent anyone could have been prepared, we were prepared.' He noted that a fund the size of New Jersey's can't remove its total investments from any one sector without driving stock prices down by the pullout, and without taking on undue

14

risk in the event a total pullout was wrong.  He said the Division's position of being significantly underweight, but not completely absent from the financial sector, was proving to be the right one.

<div align="center">*    *    *    *    *</div>

Investment Officer Arena reported that July and August had been relatively strong months for the state's equities portfolio, which was up 1.4 percent compared with a .7 percent for stocks in general as measured by Standard and Poor's 1500 Index.  He said the portfolio was being more defensive in the current crisis, but still trying to take advantage of market displacements.  Director Clark added that the Division had increased its put option hedges to offset losses."  (*Id.*)

"Director Clark said the preferred shares of Merrill Lynch purchased in January had been swapped for common shares by the Division, along with the other purchasers, and that with the Bank of America buyout of Merrill, *those shares were among the better performing stocks in the portfolio*."  (*Id.* (emphasis added)).  Thus, a month after NJDOI exchanged its preferred shares for common shares, it had no complaints including any concerning that another investor had received more favorable terms.

The capital markets experienced continued volatility throughout the remainder of 2008.  On January 20, 2009, Bank of America filed a Form 8-K with the SEC (the "January 2009 8-K") announcing a $15.31 billion fourth quarter 2008 net loss for Merrill including a credit valuation adjustment of $3.22 billion related to monoline financial guarantor exposures.  (*Id.* ¶¶ 176, 177.)  The January 2009 8-K also disclosed that, not including exposure to financial guarantors on U.S. Super

<div align="center">15</div>

Senior ABS CDOs, the gross notional amount of CDS purchased as protection to hedge predominantly corporate CDO, CLO, RMBS and CMBS exposure was $50.3 billion at December 26, 2008 and $58.0 billion at September 26, 2008. (*Id.* ¶ 178.)  Plaintiff now baldly alleges that the January 2009 disclosure of a $50.3 billion notional amount of CDSs should have been made earlier, beginning in the third quarter of 2007.  (Compl. ¶ 197.)

## ARGUMENT

### I.    THE VENUE SELECTION CLAUSES IN THE AGREEMENTS BETWEEN NJDOI AND MERRILL DO NOT DEPRIVE THIS COURT OF JURISDICTION OR PRECLUDE REMOVAL

#### A.    The Plain Language of Those Clauses Supports Jurisdiction in This Court

Section 6.10 of each Agreement between NJDOI and Merrill provides an identical venue selection clause that states in pertinent part that:

> [i]n connection with any dispute, controversy or claim arising out of or relating to this Agreement, or the validity, interpretation, breach or termination of this Agreement, including claims seeking redress or asserting rights under any law, each of the parties hereto agrees . . . that *exclusive jurisdiction and venue shall lie in the appropriate courts of the State New Jersey.*

(Muscato Cert. Exs. B, C § 6.10 (emphasis added).)

16

NJDOI now erroneously argues that this language provides that "[t]he parties[12] thus unambiguously and expressly agreed that all claims asserted by NJ DOI against Merrill Lynch . . . must be determined in *New Jersey state court*." (Pl. Mem. at 7 (emphasis added).) NJDOI's contention is plainly without merit because the clauses do not use the term "state court," but instead refer to "appropriate courts of the State of New Jersey." NJDOI's interpretation is therefore based upon a strained reading that is contrary to the plain and common sense meaning of the words employed. Significantly, the clauses do not expressly refer to the Superior Court of New Jersey. Moreover, they do not state that jurisdiction lies in the appropriate "*state* courts" of the State of New Jersey. Additionally, the clauses refer to court*s* in the plural and in actuality the Superior Court of New Jersey is the "single unitary [state] court of statewide jurisdiction." Sylvia B. Pressler, *Current N.J. Court Rules*, Rule 4.1 cmt.; *see also Charles Cerlan, Inc. v. Woodbridge Ford*, 197 N.J. Super. 104, 106-09 (Law Div. 1984) (since November 1983, through an amendment to Article VI of the New Jersey Constitution, New Jersey has had a

---

[12] In any event, Bank of America was not a party to the Agreements and as Plaintiff has alleged, Merrill is now a Bank of America subsidiary, (Compl. ¶¶ 21-23.) and is not bound by the Agreements as Merrill's parent corporation. *See Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. Civ.A. 762-N, Civ.A. 763-N, 2005 WL 2130607, at *8-10 (Del. Ch. Aug. 26, 2005); *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, No. Civ.A. 19760-NC, 2004 WL 415251, at *8 (Del. Ch. Mar. 4, 2004).

*single* unified Superior Court exercising original trial jurisdiction over all causes).

Accordingly, the words "appropriate courts of the State of New Jersey" plainly

include the Superior Court of New Jersey *and* the United States District Court for

the District *of New Jersey*. [13]

    A contractual provision should be construed in accordance with its plain and

ordinary meaning. *See, e.g., Bonnieview Homeowners Ass'n v. Woodmont Builders,*

---

[13]   The United States District Court for the District of New Jersey is clearly a court
of New Jersey. The District Court shares its bar membership with attorneys
licensed to practice by the Supreme Court of New Jersey. *See* Local Civ. R.
101.1(b).

     "The link between federal and state admission is so strong that the
     federal Court participates in a joint admission ceremony with the New
     Jersey Supreme Court where each new state licensee who pays the
     required one-time fee (*see* L. Civ. R. 101.1(i)) is simultaneously
     admitted to the federal bar . . . . [T]he Third Circuit . . . [upheld the
     local rule and found that since] ' . . . there is no *federal* procedure in
     the district court for determining an applicant's fitness to practice law
     before it, the court may properly rely on prior admission to the bar of
     the supreme court of the state in which the district court sits.' . . .
     '[T]ying district court admission to state bar admission tends to protect
     the interests of the public. For example, when a choice of either a
     federal or a state forum is available in a particular case an attorney
     admitted only to the federal court may choose that forum solely for
     that reason, possibly disregarding the interests of his client.' *Id.* Note
     that attorneys admitted to plenary membership in the Court's bar are
     subject to all applicable rules of the New Jersey Supreme Court even
     as to matters handled in the federal system. *See, e.g., Kelley Drye &*
     *Warren v. Murray Industries, Inc.*, 623 F. Supp. 522 (D.N.J. 1985)
     (Debevoise, J.) . . . ."

   Allyn Z. Lite, *N.J. Federal Practice Rules*, Local Civ. R. 101.1 cmt. 3a.

*LLC*, No. 03-4317, 2009 WL 2999355, at *29 (D.N.J. Sept. 22, 2009) (citing *J.C.*

*Penny Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004)); *Mellon Bank N.A.*

*v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) ("A court is not

authorized to construe a contract in such a way as to modify the plain meaning of

its words under, the guise of interpretation."); *ReliaStar Life Ins. Co. of N.Y. v.*

*EMC Nat'l Life Co.*, 564 F.3d 81, 88 (2d Cir. 2009) (same).

Since there is only one New Jersey *state* court and there is no language

limiting jurisdiction to "state courts," the only reasonable interpretation is that the

reference to *courts* contemplates that jurisdiction may also lie in the United States

District Court for the District *of New Jersey*. *See Johnson v. N. States Power Co.*,

No. Civ. A. 99-2394, 2000 WL 1683658, at *3 (D. Kan. Nov. 2, 2000) (finding

that "appropriate courts" makes no distinction between state of federal courts and

therefore an action may be brought in a state or federal court located within the

State of Minnesota).[14]   Moreover, the reference to courts of New Jersey does not

exclude the District Court.  *See, e.g., Jumura v. State Farm Ins. Co.*, 55 F.3d 873,

881, 882 (3d Cir. 1995) (interpreting forum selection clause of insurance contract

---

[14]   Plaintiff would be incorrect should it contend that this decision has been
implicitly rejected by the subsequent decision in *American Soda, LLP v. U.S.*
*Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005).  The
*American Soda* decision did not deal with the phrase "appropriate courts of the
State of."

which incorporated the Pennsylvania Uniform Arbitration Act and determining that the act's definition of "courts" as "any court of competent jurisdiction of [the] Commonwealth" included the United States District Court and  that contract language requiring "that actions to compel arbitration be made to a 'court of record' of Luzerne County" included the United States District Court embracing Luzerne County); *Harvard Eye Associates v. Clinitec International, Inc.*, No. Civ. A. 98-302, 1998 WL 248916 (E.D. Pa May 5, 1998) (clause provided:  "[a]ny cause or action arising out of or relating to this Agreement may only be brought in the courts of applicable jurisdiction in the Commonwealth of Pennsylvania, Montgomery County and the parties hereby submit to the jurisdiction and venue of such courts"; court found that the clause conferred jurisdiction on the District Court since it referred in the plural to "courts of applicable jurisdiction.")

This is particularly true where the subject matter of the Agreements relates to the purchase or exchange of securities of a company required to file reports with the SEC pursuant to the Exchange Act of 1934 (the "'34 Act").  The '34 Act confers exclusive jurisdiction upon the "district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States," 15 U.S.C. § 78aa, and provides further logical support that the "appropriate courts of the State of New Jersey" includes the federal district court.

Without citing a single apposite case, Plaintiff contends that "appropriate courts of the State of New Jersey" does not include the United States District Court for the District of New Jersey.  (Remand at 7.)  None of the cases cited by NJDOI control the present situation where the clause refers to "courts" and the relevant state has only a single trial level court. [15]  (*See* Remand at 7-8.)  Instead, Plaintiff cites to a series of cases in this Circuit involving different contractual language to argue that the language used in Section 6.10 of the Agreements "effectuate[s] a

---

[15]  *See Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289 (3d Cir. 2001) (granting motion to dismiss where claim against defendant based on an indemnification agreement was brought in the District of New Jersey and the agreement's forum selection clause required actions to be brought in the Southern District of New York or New York state court); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-19 (3d Cir. 1991) (finding defendant agreed to plaintiff's choice of forum where the forum selection clause provided that defendant "will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction; and all matters arising hereunder shall be determined in accordance with the law and practice of such court"); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352 (3d Cir. 1986) (granting motion to dismiss as to breach of contract action commenced in the United States District Court for the Virgin Islands where the contract forum selection provision required actions to be instituted in the courts of the State of Maryland); *CONSOL Energy Inc. v. Berkshire Hathaway Inc.*, 252 F. App'x 481 (3d Cir. 2007) (affirming district court's decision that right to removal was waived where forum selection provision stated "the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law." (quoted provision language is available in CONSOL's Appellate Brief, 2006 WL 6209800)).

21

waiver of the right to remove." (Remand at 7.) Nor do the cases cited support

Plaintiff's position that the venue selection clauses at issue here waive Defendants

right of removal.[16]

Plaintiff next turns to out-of-circuit cases but again none of the decisions

cited addresses the precise language used here or the situation where there is only a

single state trial level court. (See Remand at 8-9.)[17] For example, the court in

---

[16]  See, e.g., Cessna Aircraft Co. v. Fid. & Cas. Co. of N.Y., 616 F. Supp. 671, 673
n.1 (D.N.J. 1985) (right to removal was waived where forum selection
provision stated "[Lloyd's] hereon, at the request of the insured (or reinsured),
will submit to the jurisdiction of any Court of competent jurisdiction within the
United States and will comply with all requirements necessary to give such
Court jurisdiction and all matters arising hereunder shall be determined in
accordance with the law and practice of such Court" (alteration in original));
Oxford Realty Group, LLC v. Axis Reinsurance Co., No. 08-CV-6303, 2009
WL 1324028, at *4 (D.N.J. May 12, 2009) (right to removal waived by forum
selection cause stating "[i]t is agreed that in the event of this company's failure
to pay any amount claimed to be due hereunder, this company, at the request of
the insured, will submit to the jurisdiction of any court of competent jurisdiction
within the United States and will comply with all requirements necessary to
give such court jurisdiction and all matters arising hereunder shall be
determined in accordance with the law and practice of such court"); Fleming &
Hall, Ltd. v. Cope, 30 F. Supp. 2d 459, 462 (D. Del. 1998) (waiver of right to
removal where forum selection clause stated that all disputes arising from the
agreement "shall be brought, heard and resolved solely and exclusively by and
in the Delaware Chancery Court" [a state court in Delaware]); Cribbins v. Beal
Bank SSB, No. 07-391, 2007 WL 1451666, at *3 (W.D. Pa. May 15, 2007)
(right to remove waived where parties entered into stipulation agreeing to
consolidate two actions filed in state court).

[17]  See Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 321 (10th Cir.
1997) (right of removal waived where forum selection clause stated
"'[j]urisdiction shall be in the State of Colorado, and venue shall lie in the

(cont'd)

22

*Dixon v. TSE International Inc.*, 330 F.3d 396 (5th Cir. 2003) (per curium), dealt

with a forum selection clause stating that "*[t]he Courts of Texas, U.S.A. shall have*

*jurisdiction over all controversies*" by referring to the definition of "of" in *Black's*

*Law Dictionary* 1232 (4th ed. 1968) and determined that this phrase meant only

Texas state courts.  *Dixon*, 330 F.3d at 397-98.  In *American Soda, LLP v. U.S.*

*Filter Wastewater Group, Inc.*, 428 F.3d 921 (10th Cir. 2005),[18] the court relied on

*Dixon* to conclude that "Courts of the State of Colorado" meant state courts only

but observed that the First Circuit concluded, based on *Black's Law Dictionary* (5th

ed. 1979), that the words "courts of the Commonwealth of Massachusetts" was

ambiguous because it "'could mean all the courts physically within the state or only

---

*(cont'd from previous page)*

County of El Paso, Colorado'" because the federal district court venue is not
described in terms of counties (citation omitted)); *Milk 'N' More, Inc. v. Beavert*,
963 F.2d 1342, 1346 (10th Cir. 1992) (right of removal waived where forum
clause states "'venue shall be proper under this agreement in Johnson County,
Kansas'" because county venue referred to state not federal court (citation
omitted)); *Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d
656, 659 (2d Cir. 1988) (right of removal waived where forum selection clause
stated "'[n]o action or proceeding shall be commenced by [Koch] against
[NYCCDC] except in the Supreme Court of the State of New York, County of
New York'" (citation omitted)); *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740
F.2d 148, 155 (2d Cir. 1984) (enforcing forum selection clause stating that
"'[a]ll and any disputes, differences or questions arising from the present
Agreement shall be decided and determined by the competent court in Utrecht'"
(citation omitted)).

[18]   The Tenth Circuit stated that it did "not find persuasive cases cited by the
parties interpreting language other than 'courts of the State.'"  *Am. Soda*, 428
F.3d at 926 n.3.

those courts that trace their origin to the state.'" *Am. Soda*, 428 F.3d at 925-26 (quoting *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 7 (1st Cir. 1984)).[19]

### B.   Any Doubts as to the Meaning of Section 6.10 Are Construed Against Plaintiff

Even if this Court were to find that the venue selection clauses here are less than clear, any ambiguity should be construed against NJDOI as the drafter of the provisions. *See Guinta v. Accenture, LLP*, Civ. No. 08-3376, 2008 WL 4852934, *9 (D.N.J. Nov. 7, 2008) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("a court should construe ambiguous language against the interest of the party that drafted it.")). As set forth in the accompanying Certification of David C. Karp, counsel for NJDOI drafted the venue selection clauses at issue here.

---

[19]   *Spatz v. Nascone*, 364 F. Supp. 967 (W.D. Pa.), *order supplemented*, 368 F. Supp. 352 (W.D. Pa. 1973), provides no assistance to Plaintiff.  (*See* Remand at 9 n.4.)  There the court originally determined that a forum selection clause containing the phrase "Courts of the Commonwealth of Pennsylvania" was "ambiguous since it is susceptible of either a possessive or geographic connotation." *Spatz*, 364 F. Supp. at 969-70.  The court cited "29 Words and Phrases" which noted that many cases held that "the preposition 'of' does not mean just ownership or possession, but rather has the identical meaning of the preposition 'in' which conveys the meaning of location or inclusion within." *Id.* at 970.  Later, after discovery had been conducted, the court concluded that the agreement was to be interpreted to mean the state, not federal, court. *Id.* at 974.

24

Consequently, there is no basis to remand this case based upon the venue

selection clauses in the Agreements between NJDOI and Merrill.

## II.    SLUSA IS INAPPLICABLE AND DOES NOT REQUIRE A REMAND

Plaintiff's curious reliance on the Securities Litigation Uniform Standards

Act of 1998 ("SLUSA") to support remand of this action is without basis. (*See*

Remand at 10-11.)[20]  Under SLUSA, "covered class actions" based on state

statutory or common law cannot be maintained by any party if that action alleges a

misrepresentation or omission of a material fact or that the defendant used or

employed any manipulative or deceptive device or contrivance in connection with

purchase or sale of a covered security. *See* 15 U.S.C. § 78bb(f)(1)(A), (B).

SLUSA was enacted "to establish federal courts as 'the exclusive venue for most

securities *class action* lawsuits' involving nationally traded securities" and "to

'prevent plaintiffs from seeking to evade the protections that Federal law provides

against abusive litigation by filing suit in State, rather than Federal, court.'" *Prager*

---

[20]  The cases cited by Plaintiff, *Retirement Systems of Alabama v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257 (M.D. Ala. 2002), and *Tennessee Consolidated Retirement System v. Citigroup, Inc.*, No. 3:03-0128, 2003 WL 22190841 (M.D. Tenn. May 9, 2003), are similarly unavailing.  These actions asserted claims based on state law and/or Section 11 of the Securities Act of 1933 (the "'33 Act").  The '33 Act provides for concurrent jurisdiction of state and federal courts and contains an anti-removal provision. *See* 15 U.S.C. § 77v(a).  Here, removal was premised on the '34 Act which provides that the federal courts shall have exclusive jurisdiction for violations of this act. *See* 15 U.S.C. § 78aa.

*v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 232 (D.N.J. 2000) (emphasis added) (citations omitted).

Here, SLUSA is inapplicable because there is no covered class action based on state law and the present case involves a stated issue of federal securities law. Further, given that SLUSA is no way applicable to the present case, the removal here was in no way based upon SLUSA. *See* 15 U.S.C. § 78bb(f)(2). Therefore, SLUSA's exception for class actions involving state pension funds, *see* 15 U.S.C. § 78bb(f)(3)(B), (D), is wholly inapplicable. SLUSA's Section 2, "FINDINGS," states that SLUSA does "not chang[e] the current treatment of individual lawsuits." Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, § 2, 112 Stat. 3227, 3227 (codified at 15 U.S.C. § 78a note (Congressional Findings of 1998 Amendment)); *see Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 118 (2d Cir. 2001) ("SLUSA's preemptive effects are narrow and limited, prohibiting only class actions brought by private individuals that are based on state law and allege fraud in the sale of covered securities.").

## III.   PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED BECAUSE THIS COURT POSSESSES SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1331 AND 28 U.S.C. § 1441(a)

As set forth in Defendants' Petition for Removal, this case falls within the small category of cases where, notwithstanding Plaintiff's failure to allege a direct federal cause of action in its Complaint, two of its state-law breach of contract

26

claims and its negligent misrepresentation claim necessarily raise a stated federal

issue:  i.e., did Merrill violate its representations and warranties in Section 3.6 of

the Agreements that its SEC filings did not "contain any untrue statement of a

material fact or omit to state any material fact required to be stated therein or

necessary in order to make the statements therein, in light of the circumstances

under which they were made, not misleading."  (Muscato Cert. Exs. B & C § 3.6.)

The Agreements track the language of Rule 10b-5 promulgated under Section 10(b)

of the Exchange Act of 1934.[21]

     The Complaint alleges that certain of Merrill's SEC filings were materially

false and misleading because they allegedly failed to accurately disclose Merrill's

monoline insurance exposure.  (Compl. ¶¶ 7, 8, 58, 59, 102, 108, 112, 157, 197,

202, 210, 215, 228, 234.)  Consequently, the gist of the Complaint is that Merrill

breached the Agreements because it "failed to disclose in any of its SEC filings,

prior to the January 16, 2009 Form 8-K, and in violation of GAAP, inter alia, that

Merrill had at least [$50 billion] of undisclosed exposure on its coverage to

---

[21]   It shall be unlawful for any person, directly or indirectly, by the use of any
       means or instrumentality of interstate commerce, or of the mails or of
       any facility of any national securities exchange . . . [t]o make any
       untrue statement of a material fact or to omit to state a material fact
       necessary in order to make the statements made, in the light of the
       circumstances under which they were made, not misleading . . . in
       connection with the purchase or sale of any security.

*(cont'd)*

27

monoline insurers for High Risk Insured Assets." (Compl. ¶¶ 228, 234.)  As a result, Plaintiff's right to relief under three of its state law claims depends on the resolution of an actually disputed and substantial issue of federal law:  whether Merrill's SEC filings contained any untrue statement of a material fact or omitted to state any material facts required to make the disclosures not misleading.

Moreover, the substantial issue of federal law raised is uniquely within the purview of the federal courts.  "Whether a duty to disclose exists depends largely on the itemized disclosures required by the securities laws and the regulations promulgated thereunder." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008), *aff'd*, No. 08-3378-cv, 2009 WL 2959883 (2d Cir. Sept. 17, 2009).

District courts have original jurisdiction of civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  However, the "existence of 'a cause of action created by federal law' is not a necessary condition for federal-question jurisdiction under 28 U.S.C. § 1331 or removal jurisdiction under 28 U.S.C. § 1441(a)." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (citation omitted).  Rather, claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum

---

*(cont'd from previous page)*
    17 C.F.R. § 240.10b-5 (2009).

may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" confer federal jurisdiction. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also Broder*, 418 F.3d at 194; *EIJ, Inc. v. United Parcel Serv., Inc.*, 233 F. App'x 600, 601-02 (9th Cir. 2007) (affirming federal jurisdiction under *Grable* and granting summary judgment for defendants on breach of contract claim); *Air Measurement Techs., Inc v, Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007) (finding federal subject matter jurisdiction under *Grable* for a state malpractice claim involving patent infringement issue); *Ortiz v. Univ. of Med. & Dentistry of N.J.*, No. 08-2669, 2009 WL 737046, at *4 (D.N.J. Mar. 18, 2009) (federal jurisdiction existed and motion to remand was denied where plaintiff brought claims under state statutory law but in describing the claims alleged violations of the U.S. Constitution); *Chirik v. TD Banknorth, N.A.*, No. 06-04866, 2008 WL 186213, at *5 (E.D. Pa. 2008) (affirming federal subject matter jurisdiction over state contract claims under *Grable* and dismissing plaintiff's breach of contract action); *Koresko v. Murphy*, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) (affirming removal of plaintiff's rescission claim based on *Grable*).

Moreover, the propriety of the removal here is not affected by the inclusion in the Complaint of related claims that do not implicate federal law. "A single claim over which federal-question jurisdiction exists is sufficient to allow

29

removal." *Broder*, 418 F.3d at 194; *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 562-63 (2005) ("Once the case [is] removed, the District Court ha[s] original jurisdiction over the federal-law claims and supplemental jurisdiction under [28 U.S.C.] § 1367(a) over the state-law claims.").

Plaintiff incorrectly suggests that *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), has somehow modified *Grable*.[22] However, in *Empire HealthChoice* the Supreme Court simply applied a *Grable* analysis to determine whether a reimbursement claim by an administrator of a federal employee's health benefits plan raised a federal law issue. *Id.* at 699. The Supreme Court concluded it did not because it merely concerned the reimbursement due to the plan from a personal injury settlement. *Id.* at 700-01.[23]

---

[22] Plaintiff points to *Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577 (3d Cir. 2007), and suggests it follows *Empire Healthcare* (Remand at 12), but this case merely finds that the *Grable* standard is not satisfied where a federal statute (OSHA), which does not create a private cause of action, is not mentioned in the complaint and is merely a reference in an opposition to a motion to dismiss. *Siravo*, 256 F. App'x at 579-80.

[23] Plaintiff seeks solace in the fact that "Empire's reimbursement claim . . . is fact-bound and situation-specific." (Remand at 12.) But none is to be found because a decision here has the potential to govern other actions pending against Merrill (*see* Removal Petition at 6) and to impact other financial institutions sued for failing to disclose monoline exposures. *See, e.g., Kaess v. Deutsche Bank AG*, No. 09-cv-2556 (S.D.N.Y. filed Mar. 19, 2009).

### A.    The Complaint Necessarily Raises a Stated Federal Issue that is Substantial and Disputed

Removal of Plaintiff's Complaint was proper because, in two of its breach of contract claims and its negligent misrepresentation claim, Plaintiff alleges that Merrill violated federal securities laws by failing "to disclose in any of its SEC filings, prior to the January 16, 2009 Form 8-K, and in violation of GAAP *inter alia*, that Merrill had [more than $50 billion] of undisclosed exposure" to monoline insurers.[24]   (Compl. ¶¶ 228, 234.)  The Complaint is replete with allegations that Merrill violated the federal securities laws because its SEC filings were false and misleading:

- "Merrill disclosed certain assets in SEC filings only on a 'net' basis, and under-stated Merrill's exposure . . . ."  (Compl. ¶ 6);

- "The Merrill financial statements filed with the SEC beginning with the third quarter of 2007 through the third quarter of 2008 were in violation of GAAP (Statement of Financial Accounting Standards 107 and 133, Accounting Principles Board No. 28, Statement of Position 94-6, among others) since, *inter alia*, they failed to disclose the existence and the associated risks and uncertainties for: (i) in excess of $58.0 billion of High Risk Insured Assets; and (ii) that the insurance coverage for the risk exposures of the High Risk Insured Assets (disclosed in January 2009 as being $58.0 billion at September 26, 2008 and $50.3 billion at December 26, 2008) was obtained from monoline insurers that were themselves at risk of defaulting as evidenced by downgrades in their credit ratings beginning in 2007."  (Compl. ¶ 7);

---

[24]   Indeed, Plaintiff concedes in its Case Information Statement that "[t]his matter involves highly complex *securities*, contract and accounting issues."  (*See* Removal Petition Ex. 1 (Civil Case Information Statement).)

- "Merrill's third quarter 2007 Form 10-Q was materially false and misleading, among other reasons, because Merrill's risk of loss on CDOs and High Risk Insured Assets, including 'AAA-rated super senior CDOs,' was dependent on undisclosed concentrations of Merrill's monoline insurance." (Compl. ¶ 68);

- "Merrill's representations and warranties contained in Section 3.6 of the Share Subscription Agreement were materially false as of January 15, 2008 due to Merrill's materially false and misleading and incomplete third quarter 2007 Form 10-Q." (Compl. ¶ 77);

- "Merrill disclosed in its Form 10-K for fiscal 2007, filed with the SEC on February 28, 2008, for the first time, that Merrill had $30.4 billion of outstanding Super Senior CDOs and a hedge against that position of $23.6 billion in monoline insurance.  Merrill's fourth quarter 2007 financial results and 2007 Form 10-K were materially false and misleading because, among other things, Merrill did not disclose in excess of $50 billion in exposure to High Risk Insured Assets purportedly secured by over $50 billion in monoline Insurance.  This concentration of hedges with monoline insurers created a material risk factor that was undisclosed to investors, including NJ DOI." (Compl. ¶¶ 101-103);

- "Merrill's First Quarter 2008 financial results were materially false and misleading because, among other things . . . Merrill continued to not disclose its over $50 billion of exposure to additional High Risk Insured Assets that were only reported net of unquantified monoline insurance." (Compl. ¶ 108);

- "Merrill failed to disclose its over $50 billion in exposure to hedges on High Risk Insured Assets until January 2009 in its Form 8-K, despite the fact that this information was clearly material after Merrill became aware, at least, by the third quarter of 2007 that defaults on the underlying collateral were ballooning and would likely far exceed the ability of some monoline insurers to pay." (Compl. ¶ 202);

- "Merrill's failure to disclose the very existence of its more than $50 billion of hedges on its High Risk Insured Assets with monoline insurance, *its SEC filings, which were incorporated into the Share Subscription Agreement and Share Exchange Agreement and were warranted therein to be true and materially complete*, from, at least, the

32

Third Quarter of 2007 were materially misleading, false, and incomplete." (Compl. ¶ 210 (emphasis added)); and

- "Merrill violated GAAP (and, therefore, also *its warranties and representations in the Share Subscription and Share Exchange Agreements that its financial reports filed with the SEC complied with GAAP*) by failing to properly disclose material concentrations of risk arising from its exposure to both the underlying assets insured by the $50 billion in hedges with financial guarantors as well as its massive dependence on the financial guarantors to hedge its Corporate CDO, CLO, RMBS, and CMBS exposure." (Compl. ¶ 215 (emphasis added)).

These allegations totally undercut and refute Plaintiff's assertion that the claims in its Complaint "raise no federal legal issues, and certainly no federal legal issues that are 'disputed' or 'substantial.'" (Remand at 13.) The decision in *Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005), firmly supports the existence of jurisdiction in this case. In *Broder*, the plaintiff alleged that defendant breached a contractual provision, that subjected "all of [defendant's cable television] rates and any changes in those rates" to "'applicable law,'" by violating 47 U.S.C. § 543(d).[25] *Broder*, 418 F.3d at 197. The Second Circuit found federal jurisdiction existed under *Grable* because the federal statute was incorporated by reference into the contract that was the basis of one of plaintiff's claims, the claim raised a substantial issue of federal law, and exercising jurisdiction did not threaten to disturb the federal/state allocation of jurisdiction. *Id.* at 194-96.

_____

[25] Section 543(d) provides for uniform rates in a geographic area. *See* 47 U.S.C § 543(d).

Like the *Broder* case, Plaintiff here alleges that Merrill breached the

Agreements based upon a failure to comply with federal law requirements –

Merrill's "SEC filings, which were incorporated into the Share Subscription

Agreement and Share Exchange Agreement and were warrantied therein to be true

and materially complete, from, at least, the Third Quarter of 2007 were materially

misleading, false, and incomplete." (Compl. ¶ 210.)  Whether Merrill was required

to disclose exposure to monoline insurers as early as the third quarter of 2007

raises a substantial issue of federal law (required disclosures under the federal

securities laws) and will not disturb the federal/state allocation of responsibilities.

*See Rose v. SLM Fin. Corp.*, No. 3:05CV445, 2007 WL 674319, at *4 (W.D.N.C.

Feb. 28, 2007) (federal jurisdiction existed and motion to remand was denied as to

plaintiff's breach of contract claim, where plaintiff asserted that disclosures issued

pursuant to the federal Truth in Lending Act and the Real Estate Settlement

Procedures Act formed "some substantial part of the contract on which his state

law claim is based"); *see also Ortiz*, 2009 WL 737046, at *4 (federal jurisdiction

existed and motion to remand was denied where plaintiff brought claims under

state statutory law that also incorporated alleged violations of the U.S.

Constitution).

The cases NJDOI cites do not support a remand of this case.  Plaintiff's

reliance on *Fairfax Financial Holdings Ltd. v. S.A.C. Capital Management, LLC,*

No. 06-cv-4197, 2007 WL 1456204 (D.N.J. May 15, 2007), is simply misplaced.
There, the court observed that although the complaint alleged violations of state
and federal law, plaintiffs were able to litigate and prevail on their state RICO
claims without proving a violation of federal law. *Id.* at *3. Here, this is not
possible. By the undisputed terms of Agreements, and as alleged in the Complaint,
Plaintiff's breach of contract claims are predicated on Merrill's SEC filings being
false and misleading. Only federal law may be resorted to in evaluating NJDOI's
claims that Merrill violated SEC disclosure requirements in its SEC filings.
Plaintiff's reliance on *Fagin v. Gilmartin*, No. 03-2631, 2007 WL 419286 (D.N.J.
Feb. 1, 2007), is similarly unavailing. There, the plaintiff brought derivative
claims based on unjust enrichment and breach of fiduciary duty against certain
directors and officers of Merck & Co., Inc. The court noted that one component of
the claims was "in essence, making false filings with the SEC" and concluded that
such allegations did not "raise a substantial and disputed question of federal law."
*Id.* at *4.[26] Here, the federal issue is not one of "essence" but one that goes to the
heart of the Complaint.[27]

---

[26]  *Fagin* relied on the analysis set forth in *Stechler v. Sidley Austin Brown &
      Wood, LLP*, No. Civ.A. 05-3485, 2006 WL 90916 (D.N.J. Jan. 13, 2006), which
      granted a motion to remand where the plaintiffs alleged that defendants
      fraudulently induced them to engage in a tax shelter. The *Stechler* court found
      that "[a]s the complaint is structured, the proper interpretation of federal tax law
      is at most a relatively minor issue, not an actually disputed and substantial one."
      *(cont'd)*

35

**B.**      **Exercising Jurisdiction Does Not Disturb the Balance of Federal and State Judicial Responsibilities**

There can be no plausible argument that the Court's exercise of jurisdiction in this action could disturb "any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.  Under the '34 Act, which provides the disclosure rules at issue here, federal courts are given "exclusive jurisdiction." 15 U.S.C. §78aa.  Moreover, Congress has repeatedly expressed the substantial federal interest in matters relating to the regulation of the securities markets.  As the Supreme Court has noted, "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006); *see also Stoneridge Inv. Partners, LLC v.*

---

*(cont'd from previous page)*

    *Id.* at *6.  Here, unlike the *Stechler* case, the structure of the Complaint, which is based on the terms of the Agreements, necessarily raises substantial and disputed issues of federal law.

[27]  Plaintiff ignores *Wietschner v. Gilmartin*, a case noted in *Fagin*, which held that claims such as those asserted by the *Fagin* plaintiffs arise under federal law. *See Wietschner v. Gilmartin*, No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003) (denying motion to remand because plaintiff's claims for breach of fiduciary duty, misappropriation of confidential information and for contribution and indemnification arose under federal law where "[p]laintiff's allegations here rely on federal law as more than mere evidence of breach of fiduciary duty" because "defendant-directors made their allegedly inflated earnings reports forming the basis of both Counts I and II of the Complaint, in large part, pursuant to the requirements of federal law" and "plaintiff's alleged

*(cont'd)*

36

*Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) (reiterating the strong federal interest

in construction and application of the federal securities laws).

Consequently, the present case was properly removed to this Court and the

Motion to Remand should be denied.[28]

---

*(cont'd from previous page)*

injuries depend primarily upon accusations against Merck for violations of federal law." *Id.* at *9.

[28]   Even if Defendants' grounds for removal are subject to dispute, there is no basis here for Plaintiff's request for an award of fees and costs pursuant to 28 U.S.C. § 1447(c) since Defendants have an objectively reasonable basis for removing the action and Defendants have not sought to delay the litigation. *See Kantha v. Pac. Life Ins. Co.*, No. 06-0905, 2006 WL 2583242, at *2-3 (D.N.J. Sept. 6, 2006); *Waris v. Ormond*, No. 08-5709, 2009 WL 2385891, at *4 (E.D. Pa. July 29, 2009).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that

Plaintiff's Motion to Remand be denied.

Dated:  October 19, 2009

<div style="margin-left: 40%;">

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
(A Delaware Limited Liability
  Partnership)

</div>

Of Counsel

<div style="margin-left: 40%;">

*Attorneys for Defendants
Merrill Lynch & Co., Inc. and
Bank of America Corporation*

</div>

Jay B. Kasner
Scott D. Musoff

<div style="margin-left: 40%;">

By:  /s/ Andrew Muscato
        Andrew Muscato

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2009, I caused copies of the within

Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand, Certification

of Andrew Muscato dated October 13, 2009 [and exhibits A-J], Certification of David C. Karp

dated October 19, 2009 [and exhibits A-F], to be served by e-filing upon counsel of record below:

> Jeffrey W. Herrmann, Esq.
> COHN LIFLAND PEARLMAN
>  HERRMANN & KNOPF LLP
> Park 80 Plaza West-One
> Saddlebrook, New Jersey 07663

Courtesy copies of the Defendants' Memorandum of Law in Opposition to

Plaintiff's Motion to Remand, Certification of Andrew Muscato dated October 13, 2009 [and

exhibits A-J], Certification of David C. Karp dated October 19, 2009 [and exhibits A-F], were

served by FedEx upon counsel below:

> Robert Finkel, Esq.
> WOLF POPPER LLP
> 845 Third Avenue
> New York, NY  10022

Dated:  October 19, 2009

> /s/ Andrew Muscato_____
> Andrew Muscato